# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ADRIENNE HOOD,

       Plaintiff,

    v.

CITY OF COLUMBUS, *et al.*,

       Defendants.

Case No. 2:17-cv-471

JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth A. Preston Deavers

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT AND MOTION IN LIMINE (ECF No. 269)

This is a civil rights case arising out of a shootout with police officers. In 2016, Henry Green V and Defendant Officers Jason Bare and Zachary Rosen exchanged gunfire in the Columbus neighborhood of Linden. Green was shot dead. On appeal of a previous opinion issued by another judge of this Court granting Defendants' summary judgment motion, the Sixth Circuit held that Plaintiff Adrienne Hood, the administratrix of Green's estate, had demonstrated material issues of fact regarding her excessive-force claims. The Court of Appeals found triable issues as to the shots Defendants fired after Green was incapacitated and was no longer a safety threat. Defendants were not entitled to qualified immunity.[1] On remand, the key question is whether Plaintiff's state-law claims of assault, battery, and wrongful death also survive summary judgment. Although summary judgment is appropriate for Plaintiff's state-law claims premised on Defendants' initial shots, it is not for her claims premised on Defendants' last shots.

---

[1] This case was originally assigned to the Honorable Judge George C. Smith. After Judge Smith's passing on April 15, 2020 and after the issuance of the Sixth Circuit's opinion on appeal, this matter was reassigned to the undersigned. (ECF No. 264.)

## I.    Background

### A.  Factual History

Because the facts of this case have now been set forth twice—once in the Court's first summary judgment opinion, *Hood v. City of Columbus*, No. 2:17-cv-471, 2019 WL 4696299 (S.D. Ohio Sept. 26, 2019), *aff'd & rev'd in part*, 827 F. App'x 464 (6th Cir. 2020), and once in the Sixth Circuit's decision, *Hood v. City of Columbus*, 827 F. App'x 464 (6th Cir. 2020)—the factual background is only briefly summarized here.

On June 6, 2016, Green and his friend Christian Rutledge were walking in the Linden neighborhood when an unmarked General Motor Co. vehicle ("the GMC") driven by Defendants crossed paths with Green and Rutledge. Defendants were in plainclothes, patrolling under the Community Safety Initiative. Green crossed the street in front of the GMC, and when the GMC halted, he yelled profanities at Defendants and pointed a gun at them. Defendants drove away and circled back to Green and Rutledge. This time, a shootout ensued between Green and Defendants.

In its opinion, the Sixth Circuit described the events of the shootout in two parts: "when the shooting first started and, after a short pause, when the Officers took their last shots." *Hood*, 827 F. App'x at 466.

The Court adopts the circuit court's recounting of the "Initial Shots":

> The Officers explained the encounter as follows: they saw Green in the middle of Duxberry Avenue with his hands near his waistband where he previously had the gun. Rosen stated that he began to pull out his gun as he drove toward Green, who then pulled his gun from under his shirt; Rosen aimed his gun at Green with his right hand while putting the car in park with his left hand reaching over his body. Rosen said that he opened the door of the car with his left hand and began to get out of the car, shouting "Police!" and "Don't Move!" Rosen stated that Green pointed the gun at him and "was either firing or was about to fire his weapon at [him]." Rosen noted that he fired several shots as he fell back on his seat in the GMC; Green fired toward Rosen and the GMC, shooting out its front and back driver-side windows.

Bare explained that he got out of the car from the rear passenger door with his gun drawn and began to move around the front of the GMC toward Rosen and Green, flashing his police badge. The Officers were driving an unmarked car and the shooting started immediately after they got out of the car. Both officers were in plainclothes but stated that they were wearing their police badges on lanyards. Rutledge stated that he did not know they were police officers at the time of the encounter.

Rutledge stated that when the shooting started, he ran westbound on Duxberry Avenue toward the house of Green's aunt and did not see the initial round of shots. Several people who were near the intersection witnessed the incident in whole or in part. Jamar Jordan, who was standing in front of his home on Duxberry Avenue and Ontario Street, said that Green did not have his gun out initially, but pulled it out after two shots from the Officers. Shantel Anderson, who was in her house on Duxberry Avenue close to the intersection, stated that she saw Green shoot out the windows of the GMC, after which the officers shot back. Harold Newsome and Erika Hickman were near the sidewalk by Anderson's house on Duxberry Avenue, with Newsome inside his vehicle and Hickman just outside. When the shots were fired, Newsome grabbed Hickman and pushed her into the vehicle under the dashboard. Neither saw Green with a gun or firing a gun. Jherri Alfred, who was by his car approximately 200 feet south of the intersection on Ontario Street, said that he saw Green hold a gun up in the air right before the shots started, though he did not know who took the first shot, and could not say whether Green shot at the Officers when his gun was initially in the air.

*Id.* (alteration in original).

What happened next is of critical importance to this case. The parties dispute whether Defendants continued to fire after Green fell on the ground, shots which the Sixth Circuit labeled the "Last Shots." *Id.* at 469. Rosen explained that "[a]fter the initial shots, Green momentarily moved out of Rosen's view" and that Rosen "moved away from the GMC door and fired additional shots at Green in rapid succession, but stopped firing after Green fell to the ground and dropped his gun." *Id.* at 466. Bare explained that "he fired several shots at Green while Green was shooting at Rosen, and when Green fell to the ground, he also stopped firing immediately." *Id.* On the other hand, Plaintiff points to eyewitness testimony from Jordan that after Green was "struck by the Officer's initial shots," he dropped his gun, fell to his knees, and then fell onto his back. *Id.* at 467. Jordan testified that "the Officers continued to shoot at Green even after he dropped his gun

and while he was on his knees, but the shots stopped once he was on his back." *Id.* Similarly, "Newsome stated that 'after [the police] got out of the car, [Green] was laying on the ground, they kept shooting him,'" and "Alfred said that after Green was shot several times, his gun flew out of his hand and his shoe flew in the air before he hit the ground, and that the Officers shot Green two or three more times each after he hit the ground." *Id.* (alterations in original). And finally, Rutledge stated that the final two shots from the Officers occurred when "one of the Officers walked up to Green, who was on the ground and 'looked like he was already dead,' and shot him two times within two feet." *Id.*

### B. Procedural History

Plaintiff filed her complaint on June 1, 2017 against Defendants Bare and Rosen, as well as the City of Columbus and other police and city officials. (ECF No. 1.) She raises five claims, including civil rights claims via 42 U.S.C. § 1983: (1) Wrongful death and survival action under § 1983 and Ohio Revised Code § 2125.01, (2) excessive-force and unreasonable-seizure claims under the Fourth and Fourteenth Amendments, (3) racial discrimination and equal protection claims under the Fourteenth Amendment, (4) assault and battery under Ohio Revised Code §§ 2903.11, 2903.12, and 2903.13, and (5) a claim for municipal liability for civil rights violations against the City of Columbus. (ECF No. 1 at PageID #27–35.)

After discovery, three motions for summary judgment were filed. The City of Columbus filed a motion (ECF No. 172), which was granted, *Hood*, 2019 WL 4696299, at * 15–16. The police and city officials filed a motion (ECF No. 173), which was also granted, *Hood*, 2019 WL 4696299, at * 15–16. Defendants Bare and Rosen filed a motion (ECF No. 171), which was granted only on the basis of Plaintiff's federal claims against them. *Hood*, 2019 WL 4696299, at *12–14. The Court declined to exercise supplemental jurisdiction over Plaintiff's state-law claims

of assault, battery, and wrongful death against Defendants, and it dismissed the claims without prejudice. *Id.* at *16.

Plaintiff appealed the Court's dismissal of her § 1983 claims based on excessive force against the City of Columbus, Defendants Bare and Rosen, and the other police and city officials. (ECF No. 261.) The Sixth Circuit affirmed the dismissal of the City and the other officials. *Hood*, 827 F. App'x at 472. The court of appeals also affirmed in part and reversed in part the dismissal of the excessive-force claims against Defendants Bare and Rosen. In its earlier opinion, this Court analyzed the incident as one discrete incident, rejecting Plaintiff's argument that the shots must be analyzed via the segmented approach because the events occurred so quickly. *Hood*, 2019 WL 4696299, at *11–12. However, the Sixth Circuit disagreed, concluding that the evidence demonstrated a gap in events in the shooting, either that Green disappeared from view or that Green fell to the ground, meaning a segmented approach was required. *Hood*, 827 F. App'x at 470. Accordingly, the court analyzed the incident in two parts—Defendants' Initial Shots and Last Shots. *Id.* at 469–70. The court affirmed the dismissal of Plaintiff's excessive-force claims premised on their Initial Shots against Defendants Bare and Rosen, determining that there was no genuine factual dispute that the Defendants' conduct was reasonable. *Id.* at 469. The Sixth Circuit reversed this Court's holding as to the Last Shots, however, holding that a reasonable jury could find the Defendants' Last Shots after the gap were unreasonable and that this conduct violated clearly established law, meaning that Defendants are not entitled to qualified immunity. *Id.* at 469–72.

On remand, this Court permitted Defendants to file a second motion for summary judgment on Plaintiff's revived state-law claims. (ECF No. 268.) Defendants were also permitted to file related motions in limine. (*Id.*) Defendants filed the instant combined motion, which is best

construed as a partial motion for summary judgment and a motion in limine. (ECF No. 269.) The briefing is now complete. (ECF Nos. 273, 274.)

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 452 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "In order for the non-movant to defeat a summary-judgment motion, there must be evidence on which the jury could reasonably find for the [non-movant]." *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 992 (6th Cir. 2020) (alteration in original) (quoting *Bard v. Brown County*, 970 F.3d 738, 748 (6th Cir. 2020)). The court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Johnson v. City of Saginaw*, 980 F.3d 497, 506 (6th Cir. 2020) (quoting *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013)). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. Analysis

Defendants raises three grounds that they argue support summary judgment on Plaintiff's assault, battery, and wrongful-death claims: (1) these state-law claims are barred by Ohio Revised Code § 2307.60(B)(2), (2) Defendants are immune to state-law claims related to their Initial Shots

pursuant to Ohio Revised Code § 2744.03(A)(6), and (3) Plaintiff cannot establish causation for wrongful death based on Defendants' Last Shots. Summary judgment is not warranted on Plaintiff's state-law claims based on Defendants' Last Shots despite Defendants arguments that § 2307.60(B)(2) bars these claims and that Plaintiff cannot establish causation. Summary judgment is, however, appropriate for the claims based on Defendants' Initial Shots because Defendant are entitled to immunity under § 2744.03(A)(6).

### A. Section 2307(B)(2)

Section 2307.60(B)(2) limits a plaintiff or their personal representative from recovering in "a tort action" under three circumstances.[2] First, a plaintiff cannot recover if they have been convicted of or "pleaded guilty to a felony, or to a misdemeanor that is an offense of violence, arising out of criminal conduct that was a proximate cause of the injury or loss for which relief is claimed." § 2703.60(B)(2)(a). Second, a plaintiff cannot recover if they "engaged in conduct that, if prosecuted, would constitute a felony," a violent misdemeanor, or an attempt to commit either a felony or violent misdemeanor, and "that conduct was a proximate cause of the injury or loss" the plaintiff is claiming. § 2307.60(B)(2)(b). Finally, a plaintiff cannot recover when the relief was "a proximate result of the victim of conduct that, if prosecuted, would constitute a felony," a violent misdemeanor, or an attempt to commit either, and the victim was "acting against the person in self-defense, defense of another, or defense of the victim's residence." § 2307.60(B)(2)(c).

Plaintiff's assault and battery claims are not barred by § 2307.60(B)(2). Although an action for wrongful death under chapter 2125 of the Ohio Revised Code, such as Plaintiff's, is defined as

---

[2] There is no caselaw that this Court could find interpreting or applying § 2307.60(B)(2). The parties also did not cite any caselaw addressing this subsection. Only two non-Ohio courts cite this provision to note that some states provide immunity from civil liability, *State v. Wilson*, 941 N.W.2d 579, 587 n.5 (Iowa 2020), and *Greenwald v. Van Handel*, 88 A.3d 467, 378 & n.4 (Conn. 2014).

a "tort action," § 2307.60(B)(1)(a), this statute does not bar claims premised upon intentional torts, § 2307.60(B)(4). Plaintiff raises claims consisting of intentional torts.[3]

Plaintiff's wrongful-death claim is also not barred because Defendants fail to meet their initial burden at summary judgment to demonstrate that § 2307.60(B)(2)(b) or (c), an affirmative defense, bars Plaintiff's claim. "An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it." *State ex rel. The Plain Dealer Publ'g Co. v. Cleveland*, 661 N.E.2d 187, 189 (Ohio 1996); *see also Aquatic Renovation Sys., Inc. v. Village of Walbridge*, 110 N.E.3d 877, 883 (Ohio Ct. App. 2018) (quoting *State ex rel. The Plain Dealer*, 661 N.E.2d at 190). In other words, affirmative defenses "attack[ ] the legal right to bring a claim as opposed to attacking the truth of the claim." *Norfolk S. Ry. Co. v. Allied Erecting & Dismantling Co., Inc.*, 775 F. App'x 178, 189–90 (6th Cir. 2019) (citing *R.C. Olmstead, Inc. v. GBS Corp.*, No. 08 MA 83, 2009 WL 4981226, at *8 (Ohio Ct. App. Dec. 18, 2009)). By pointing to §2307.60(B)(2), Defendants do not attack the truth of Plaintiff's wrongful-death claim, *i.e.* that they did not cause Green's wrongful death. Instead, they attack Plaintiff's legal right to bring the claim by asserting her claim is barred. And in the civil context in Ohio, "[t]he party who raises an affirmative defense bears the burden of proving the defense." *Hetzer-Young v. Precision Airmotive Corp.*, 921 N.E.2d 683, 691 (Ohio Ct. App. 2009) (collecting cases); *see also Snyder v. Honeywell Int'l, Inc.*, No. 3:20 CV 74, 2020 WL 6318924, at *2 (N.D. Ohio Sept. 18, 2020) (citing *Hetzer-Young*, 921 N.E.2d at 691). Thus, it is Defendants' burden at trial to show that § 2307.60(B)(2) bars Plaintiff's wrongful-death claim.[4]

---

[3] The parties do not substantively address § 2307.60(B)(4). Defendants submitted a notice filing that provided some of the text of § 2307.60(B)(4) and appeared to emphasize the language that notes self-defense is not included in intentionally tortious conduct. (ECF No. 280 at PageID #10140.) Defendants did not make a self-defense argument in their brief, and the Court views the issue as abandoned. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013).

[4] Relatedly, Defendants technically forfeited their § 2703.60(B)(2) defense because they did not raise it in their answer. (ECF No. 11 at PageID #76); *R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int'l Ass'n Local*

"Where a defendant seeks summary judgment on an affirmative defense on which it will bear the ultimate burden of proof at trial, summary judgment is proper 'only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary.'" *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 461 (6th Cir. 2014) (alteration in original) (quoting *Beck-Wilson v. Pincipi*, 441 F.3d 353, 365 (6th Cir. 2006)); *Epperson v. Res. Healthcare of Am., Inc.*, 566 F. App'x 433, 439 (6th Cir. 2014) ("[S]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." (last alteration in original) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999))). The movant defendant must still make an initial showing, but when the defendant bears the burden at trial, the "initial burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Specifically, the moving party "must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Surles*, 678 F.3d at 455–56; 10A Mary Kay Kane, Federal Practice & Procedure § 2727.1, Westlaw (database updated Oct. 2020); *see also United States v. Feldman*, 439 F. Supp. 3d 946, 951 (E.D. Mich. 2020). If the moving defendant fails to meet his burden at this initial step, the plaintiff has no obligation to respond to demonstrate a material issue of fact, and the motion must be dismissed. *Fonseca v.*

---

*Union No. 33*, 335 F App'x 516, 519 (6th Cir. 2009). But because Plaintiff had notice and an opportunity to respond, the Court considers Defendants' argument. *See Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003).

*Consol. Rail Corp.*, 246 F.3d 585, 591 (6th Cir. 2001); Kane, *supra*, at § 2727.1.[5] Defendants do not meet their initial burden to demonstrate that their defenses under § 2307.60(B)(2)(b) and (c) are beyond dispute.

Defendants fail to show that § 2307.60(B)(2)(c) applies. (ECF No. 269 at PageID #10091.) To satisfy subsection (B)(2)(c), Defendants must put forward some affirmative argument and evidence that they were acting in some manner of self-defense. Instead, Defendants simply quote subsection (B)(2)(c).

Defendants also do not satisfy their initial burden with regard to § 2307.60(B)(2)(b) because they do not layout the elements of the felonies, violent misdemeanor, or attempts thereof, nor they do not show that Green's conduct was the proximate cause of his death. Defendants cite without explanation to seven offenses that Green allegedly committed that satisfy the statute's requirement that the plaintiff commit a felony, violent misdemeanor, or an attempt thereof: aggravated menacing, carrying a concealed weapon without a permit, using a weapon while intoxicated, receiving stolen property, attempted murder, felonious assault, and "three different types of discharging a firearm on or near prohibited praises." (ECF No. 269 at PageID #10092.)[6] Each of these offenses has elements, and Defendants do not to set forth these elements and connect them to the record evidence.

Defendants also do not satisfy their initial burden to demonstrate that these alleged crimes committed by Green were the proximate cause of his death. This would, at the least, require connecting each crime and the specific conduct it prohibits to his death. Instead, Defendants simply state that "[t]hese felonies and violent misdemeanors set this entire incident in motion, and

---

[5] Plaintiff argues that Defendants fail to meet their initial burden, but she raises this argument as if Defendants did not bear the burden of proof at trial for their affirmative defense. (ECF No. 273 at PageID #10120–21.)

[6] These offenses are all felonies or included as an offense of violence as defined by § 2901.01 (A)(9)(a).

it is reasonably foreseeable that Green would encounter deadly resistance while committing these crimes." (*Id.* at PageID #10092–93.) This is an assertion, not a showing.

Even were this Court to make the generous inferences required to conclude that Defendants satisfied their initial burden, Plaintiff demonstrates a factual dispute regarding proximate causation for each of the seven offenses Defendants alleged Green committed. Any aggravated menacing, which the Court assumes occurred when Green first showed and pointed his gun at Defendants because Defendants do not indicate what conduct they refer to, occurred *before* the shootout and before the Defendants drove away initially. The same is true of Green's receipt of stolen property. A reasonable jury could easily find that Green's conduct in these instances was too attenuated from his death during the shootout to be foreseeable. A reasonable jury could also conclude that carrying a concealed weapon would not on its own foreseeably lead to the use of deadly force. And there is a factual question whether Green's use of the weapon while intoxicated, though certainly a complicating factor, was a foreseeable cause of his death. There is no evidence that Defendants knew or recognized that Green was intoxicated at the time of the shootout. Therefore, a jury could conclude that Green's death was not foreseeable. And as the Sixth Circuit explained in its opinion, there was a gap between the Initial and Last Shots in which Plaintiff has shown Green appeared to be incapacitated and his gun was out of his hand. At this point, Green could no longer have been committing any of these offenses, such as assault, attempted murder, or the illegal discharge of a firearm, and a reasonable jury could find that Defendants' decision to continue firing *after* Green's incapacitation severed the causal link between Green's offending conduct and his death.[7] At best, Defendants show room for disagreement, not that a reasonable jury *could only*

---

[7] Plaintiff contends that the Sixth Circuit's opinion requires denial of Defendants' summary judgment because "as a matter of law, it can be reasonably inferred that the Court intended for a jury to hear the remaining facts of this case." (ECF No. 273 at PageID #10123.) The Sixth Circuit, however, did not address Plaintiff's state-law claims on appeal; indeed, it would have no jurisdiction to do so because this Court also initially did not address these

agree with their position, warranting judgment as a matter of law on their affirmative defense. *Beck-Wilson*, 441 F.3d at 365; *cf. Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) ("Ordinarily, causation is a question to be resolved by a jury.").

Accordingly, Plaintiff's assault, battery, and wrongful-death claims based on Defendants' Initial and Last Shots are not barred by § 2703.60(B)(2).

### B. Section 2744.03(A)(6) and Defendants' Initial Shots

Defendants also argue that they are immune from any claims premised on their Initial Shots based on § 2744.03(A)(6). (ECF No. 269 at PageID #10093.) Immunity under this provision is an affirmative defense. *Argabrite v. Neer*, 75 N.E.3d 161, 164 (Ohio 2016). Accordingly, Defendants must meet a "higher" initial burden as the movant on this defense. *Supra* Part III.A. Defendants meet their initial burden to point to evidence demonstrating no factual disputes exist for trial, but Plaintiff then fails to demonstrate a genuine material fact dispute.

Defendants satisfy their burden. Section 2744.03(A)(6) provides immunity to employees of a political subdivision except under three circumstances: (a) when the employee's conduct is "manifestly outside the scope of the employee's employment or official responsibilities," (b) when the employee's conduct is "malicious," "in bad faith, or in a wanton or reckless manner," and (c) when liability is otherwise imposed by statute. Defendants provide undisputed facts that Defendants' Initial Shots were not manifestly outside of their employment; the shots occurred while Defendants were on duty, (ECF No. 273 at PageID #10092), and as a matter of law there is

---

claims. *See* 28 U.S.C. § 1291 (stating that federal appellate courts have jurisdiction over only final orders). Plaintiff also stretches the law-of-the-case doctrine much too far. The law-of-the-case doctrine is issue specific. *See Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015). The issue on appeal was whether Defendants' conduct was unreasonable and hence excessive, which was analyzed under a segmented approach. That is not the same issue as Plaintiff's wrongful-death claim, which is whether Defendants caused Green's death by a "wrongful act, neglect, or default." Ohio Revised Code § 2125.01. That being said, Plaintiff's point that the Sixth Circuit recognized the significance of the gap between the Initial and Last Shots is well-taken. It would make little sense to acknowledge this interpretation of the record in the light most favorable to Plaintiff for her federal claims but ignore it for her state-law claims.

no dispute that this conduct was reasonable, *Hood*, 827 F. App'x at 469. And as for whether the Initial Shots were malicious or in bad faith, the Sixth Circuit has determined that reasonable officer conduct is inconsistent with malice and bad faith under this provision. *Pollard v. Columbus*, 780 F.3d 395, 404 (6th Cir. 2015). Finally, there is no suggestion that liability is otherwise imposed by statute.

Plaintiff fails to show that a fact dispute exists. Plaintiff primarily argues that Defendants fail to show an absence of causation, addressing both the Initial and Last Shots. (ECF No. 273 at PageID #10125–26.) With regard to employee immunity, however, causation is irrelevant. The applicability of § 2744.03(A)(6) turns on the nature of Defendants' conduct and whether other statutory provisions impose liability. Additionally, Defendants only raise this immunity argument as to Plaintiff's state-law claims based on Defendants' Initial Shots. Plaintiff points to no facts from which a reasonable jury could find that Defendants' First Shots were manifestly beyond the scope of their employment. Moreover, she does not address *Pollard* or otherwise point to facts suggesting Defendants acted with malice, recklessness, wantonness, or bad faith in their Initial Shots, nor does she point to another statutory provision imposing liability.

For these reasons, a reasonable jury could only find that Defendants are entitled to immunity under § 2744.03(A)(6) for their Initial Shots for Plaintiff's assault, battery, and wrongful-death claims.

### C. Causation for Wrongful Death Claim

Finally, Defendants argue that Plaintiff cannot demonstrate a genuine and material fact dispute regarding proximate causation for her wrongful-death claim premised on Defendants' Last Shots. As Defendants see it, Green's gunshot wound to his chest was the cause of death, and so Plaintiff must connect Defendants' Last Shots to that wound. (ECF No. 269 at PageID #10099.)

Because it is "impossible" to discern from the expert testimony whether this shot was fired during Defendant's Initial or Last Shots, Defendants argue, Plaintiff cannot demonstrate a factual dispute as to causation that rises beyond speculation. (*Id.*) Plaintiff demonstrates a factual dispute regarding causation based on both the expert testimony, which does not foreclose Plaintiff's theory of the case, and eyewitness testimony supporting her version of events.

Plaintiff first identifies a dispute about whether the gunshot wound to the chest was the only cause of death. Green suffered from eight gunshot wounds. (ECF No. 221-10 at PageID #9539.) The coroner indicated that Green's cause of death was gunshot number one (*see id.* at PageID #9539), but Plaintiff's expert Dr. Francisco J. Diaz opined that Green died of multiple gunshot wounds—gunshot wound number one but also shots two and eight." (ECF No. 196 at PageID #6390.) According to the reviewer of the coroner's report, gunshot wound number one was through Green's right shoulder into his chest. (*Id.* at PageID #9540.) Gunshot number two was through Green's right back and exited through his right axilla (armpit). (*Id.* at PageID #9540–41.) And gunshot number eight was a bullet graze to the chest. (*Id.* at PageID #9542.) Thus, Plaintiff must show that at least one of these shots occurred during the last shots and by each Defendant.

The conflicting expert testimony demonstrates a genuine issue of material fact. Gunshot wound number one and two had downward bullet paths, indicating that Green was shot while he was falling to the ground or on the ground. (ECF No. 221-10 at PageID #9540–41.) Dr. Diaz concluded that Green's three fatal gunshot wounds could have occurred when Green was "down or in the process of going down." (ECF No. 196 at PageID #6390.) Even Defendants' expert Matthew Noedel said he couldn't rule out that Green received these downward gunshot wounds while on the ground, although he also ruled in the possibility that Green was shot while he himself

was shooting from the ground or in a lowered position. (ECF No. 194 at PageID #5547–48, 5578, ECF No. 159 at PageID #2761.) This testimony presents a factual dispute and is not inconsistent with Plaintiff's contention that Green received the three fatal shots during Defendants' Last Shots.

Plaintiff also points to eye-witness testimony that supports her version of events. (ECF No. 273 at PageID #10116–18.) For instance, Jamar Jordan testified that after Green was hit on the right side initially by Defendants, that Green dropped to the ground, that he then stood up to shoot at Defendants, and that when he fell again to the ground and dropped his gun, the Defendants kept shooting. (ECF No. 186 at PageID #9832–33.) And Harold Newsome testified that Green fell to the ground after one shot and that Defendants kept shooting. (ECF No. 188 at PageID #4847.) A reasonable jury could conclude that the three fatal gunshots, two of which had downward projections, occurred during Defendants' Last Shots because Green was only shot on the ground once he was down.[8]

Defendants argue that the expert opinions are insufficient to stave off summary judgment because the opinions are too equivocal. Plaintiff cannot rely on evidence that is "merely colorable" or "not significantly probative" to support this showing. *Anderson*, 477 U.S. at 248–49. And it is true that the experts appear to agree that it is impossible to conclusively determine the order in which the gunshots occurred based on examination of Green's injuries postmortem, and therefore cannot conclusively determine whether Green received gunshot wounds one, two, and eight during the Initial or Last Shots. (ECF No. 221 at PageID #9384, 9389–90; ECF No. 159 at PageID #2750–51, 2755–56; ECF No. 194 at PageID #5548.) But Defendants neglect to look at the entirety of the record evidence, especially the eye-witness testimony.

---

[8] Defendants do not address Defendants Rosen's and Bare's conduct separately, even though they acknowledge that a bullet in Green's chest came from Rosen's gun. (ECF No. 269 at PageID #10096.) Accordingly, the Court does the same.

For these reasons, summary judgment on this ground is inappropriate. Plaintiff's wrongful-death claim based on Defendants' Last Shots shall proceed to trial.

### D. Motion in Limine

Defendants also move this Court to exclude evidence "that Greens' death caused any of Green's beneficiaries any sort of damages or distress" because Defendants are entitled to summary judgment on Plaintiff's wrongful-death claim. (ECF No. 269 at PageID #10100.) Plaintiff's wrongful-death claim regarding Defendants' last shots survives for trial. Accordingly, this evidence is relevant and therefore admissible. Accordingly, Defendants' motion in limine must be denied.

## IV. Conclusion

Accordingly, Defendants' partial motion for summary judgment and motion in limine (ECF No. 269) is **GRANTED IN PART AND DENIED IN PART**. It is granted with respect to Plaintiff's assault, battery, and wrongful-death claims premised on Defendants' Initial Shots. It is denied with respect to Plaintiff's assault, battery, and wrongful-death claims based on Defendants Last Shots. It is also denied as to Defendants' motion in limine.

**IT IS SO ORDERED.**


**6/7/2021**          **s/Edmund A. Sargus, Jr.**
**DATE**                      **EDMUND A. SARGUS, JR.**
                                    **UNITED STATES DISTRICT JUDGE**