**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ADRIENNE HOOD,<br><br>    Plaintiff,<br><br> v.<br><br>CITY OF COLUMBUS, OHIO, et al.,<br><br>    Defendants. | Case No. 2:17-cv-471<br><br>Judge Edmund A. Sargus<br><br>Magistrate Judge<br>Elizabeth Preston Deavers<br><br>**DEFENDANTS' BRIEF<br>ADDRESSING SCOPE OF TRIAL** |

Pursuant to this Court's October 22, 2021 Order (ECF No. 307), Defendants Jason Bare and Zachary Rosen (collectively, the "Officers") submit the following brief addressing the scope of trial.

**A. BACKGROUND AND COURT OF APPEALS' DECISION**

This matter arises out of a fatal police-involved shooting. (*See* COMPLAINT ¶1, ECF NO. 1.) On June 6, 2016, Mr. Green died from wounds he suffered in a gunfire exchange with Officers Jason Bare ("Bare") and Zachary Rosen ("Rosen"). (*See id.*) On June 1, 2017, Plaintiff commenced this lawsuit against Bare and Rosen, Eric Pilya, Gary Cameron, Kim Jacobs, and the City of Columbus. (*See id.* ¶¶21–26.)

On September 26, 2019, this Court granted summary judgment to all of the Defendants on all of the federal claims asserted in this action. (*See* OP. & ORDER PP. 1, 35, ECF No. 259.) This Court specifically held that Rosen and Bare's use of deadly force on Green was objectively reasonable, does not amount to excessive force in violation of the Fourth Amendment, and was not a violation of Green's clearly established constitutional rights. (*See id.* at pp. 25, 30, 31.) On appeal, the Sixth Circuit affirmed summary judgment, but only in part. *Hood v. City of Columbus*,

827 F.App'x 464, 465 (6th Cir. 2020). With respect to what it called the "Officers' Initial Shots," the Sixth Circuit found as follows:

> [O]bjectively reasonable officers could have viewed Green, who pointed and fired a gun at the Officers in close proximity, as a serious and immediate safety threat to themselves and others. The totality of the circumstances—the proximity of Green to the Officers, the fact that he had a gun with him and either shot at or was about to shoot at the Officers, and the split-second decision that the Officers had to make—suggest that the Officers did not violate Green's constitutional rights when they first fired at Green.

*Id.* at 469.

In reversing part of the district court's summary judgment ruling, the Sixth Circuit explained that, "[e]ven if it was reasonable for the Officers to open fire, however, that does not automatically clear the entire encounter of the Constitution's prohibition against excessive use of force." *Id*. The Sixth Circuit stated it is crucial to "separate [the officer's] decision-points and determine whether each of his particular decisions was reasonable." *Id.* at 470. The Sixth Circuit found separate decision points in this case, explaining as follows:

> While all the shots fired were in quick succession here, Rosen himself remembered a momentary lapse when Green disappeared from his view. And Rutledge's observation that the Officers walked over to Green and took more shots while Green was on the ground shows a segment of the event separate from the initial shots. Alfred, who was by his car on Ontario Street, also said that the Officers continued to shoot at Green even as he was falling to the ground, and then they each took two or three more shots when Green was on the ground. It appears that there were gaps between the Officers' shots, and they had time to reassess Green's threat.

*Id.* at 470. The Sixth Circuit went on to explain that although the Officers testified that they stopped shooting Green when he fell to the ground, other witnesses offered conflicting testimony. *Id.* at 470-71. Accordingly, the Court concluded that there was a dispute of fact regarding when the Officers stopped shooting Green. *Id.* at 471. The Court found that the dispute is "material to whether the Officers continued to shoot at Green after he was no longer a physical threat, in

2

violation of Green's constitutional rights," and that "a jury could reasonably conclude that the Officers' use of force in this context was unreasonable." *Id.* Importantly, when analyzing the above testimony, the Sixth Circuit was drawing all reasonable inferences in favor of Plaintiff, the nonmoving party. *Id.*

**B.  STANDARD OF LAW FOR EXCESSIVE FORCE CASES**

In light of the Sixth Circuit's partial reversal, the law of the case limits this trial to a single issue (couched as both federal and state-law claims) regarding the "Officers' Last Shots," *i.e.*, whether the Officers continued to shoot Green at a time when they did not have probable cause to believe he posed a safety threat. An "objective reasonableness" standard governs whether an officer's particular use of force was excessive, *see Graham v. Connor*, 490 U.S. 386, 388 (1989), and deadly force is objectively reasonable when an officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others. . ." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *see also Hood v. City of Columbus*, 827 F. App'x 464, 469 (6th Cir. 2020) ("We have held that 'an officer may use deadly force whenever he or she, in the face of a rapidly unfolding situation, has probable cause to believe that a suspect poses a serious physical threat either to the police or members of the public.'" (quoting *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 487 (6th Cir. 2007)). The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Further, the officer's conduct is to be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* To determine whether a suspect presents an imminent danger to officers or the public at the time of the officers use deadly force

requires an analysis of both the moments before the shots were fired and the prior interactions between the suspect and the Officers. See *Latits v. Phillips*, 878 F.3d 541, 548. (6th Cir. 2017). The Court may consider only the facts that were knowable to the Officers at the time of the incident. *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam).

**C. SCOPE OF TRIAL**

Based on the Sixth Circuit's decision and the relevant legal standards, the issue for trial is whether the Officers shot Green at a time when they lacked probable cause to believe he posed a serious safety threat (*i.e.*, whether they shot Green when it was unreasonable to do so). In order to present the Officers' case to the jury, it is critical to discuss the totality of the circumstances, which includes evidence regarding the threat that Green posed to the Officers, the severity of the crime at issue, and the Officers' prior interactions with Green. *See Graham,* 490 U.S. at 396; *Latits*, 878 F.3d at 548. Thus, evidence regarding the fact that Green had a gun and was shooting at Rosen and Bare (at any point during the incident) is central to the remaining issues for trial.

Importantly, the Officers maintain that this was a rapidly occurring incident and that they had probable cause to believe that Green posed a serious safety threat at all times in which they were shooting him. Based on the Sixth Circuit's opinion, as a matter of law, the Officers acted reasonably when they began shooting Green. The issue for trial is whether the Officers acted reasonably when they fired any shots after the "momentary pause" described by Officer Rosen. Although Officer Rosen does describe a momentary pause, both Officers testified that Green was still shooting at Rosen after that "pause," and that the entire shooting incident lasted only 3-5 seconds. Thus, a factual dispute exists regarding whether Green's shots were part of the "initial shots" as argued by the Plaintiff. Indeed, the Officers' testimony regarding what happened after the "momentary pause" is as follows:

4

>Officer Rosen momentarily stopped firing as Green ducked out of his view on the opposite side of Rosen's now open driver-side door. ROSEN AFF. ¶ 33 (R.162 #2878). Officer Rosen didn't know if he had struck Green or if Green was seeking concealment from Rosen's opened door. *Id*. Officer Bare moved quickly to his right and circled toward the front passenger's side of the GMC as Green was circling around Officer Rosen's position. BARE AFF. ¶ 35 (R.153 #2677); BARE AFF. EX.3 (R.153-3 #2682). Officer Rosen heard additional gunshots and moved out from behind the driver-side door to the north/northeast. ROSEN AFF. ¶ 34 (R.162 #2879). Green was moving north/northwest aiming his weapon and firing at Officer Rosen. *Id*. Officer Bare fired several shots as Green was pointing his weapon and firing at Officer Rosen. BARE AFF. ¶ 36 (R.153 #2677). Officer Rosen fired several additional shots in rapid succession. ROSEN AFF. ¶ 34 (R.162 #2879). Green fell to the ground, dropped his gun, and the Officers immediately stopped firing. BARE AFF. ¶ 36 (R.153 #2677); ROSEN AFF. ¶ 34 (R.162 #2879); ROSEN AFF. EX.17 (R.162-17 #2898).
>
>This was a tense, uncertain, and rapidly evolving situation. BARE AFF. ¶ 37 (R.153 #2677); ROSEN AFF. ¶ 35 (R.162 #2879). Rosen fired a total of fifteen shots in approximately three to five seconds, inclusive of the momentary pause. ROSEN AFF. ¶ 35 (R.162 #2879). Officer Bare fired a total of seven shots in approximately two seconds. BARE AFF. ¶ 37 (R.153 #2677). Officer Rosen fired his weapon at Green because he was in fear for his life. ROSEN AFF. ¶ 36 (R.162 #2879). Green fired multiple bullets directly at Officer Rosen and Rosen believed he had no other means to protect his life. *Id*.

(BARE AND ROSEN MSJ, ECF No. 171, PAGEID # 3187-88.)  In addition to their own testimony, the Officers will submit the forensic evidence collected from the scene, including cartridge cases, bullets, and evidence regarding bullet paths to support their account of the incident and contradict other witness testimony.  Defendants' expert witness, Matthew Noedel, will also testify that some of the bullets delivered by Green towards the Officers had an upward trajectory, which shows that Green was firing while in a lowered position.  Thus, in order to defend against Plaintiff's claims, the Officers must be permitted to present the facts and circumstances that gave them probable cause to believe Green was still a threat at all times in which they were shooting at him, which includes the fact that Green had a gun and was firing at the Officers.  *See e.g., Livermore v. Lubelan*, 476 F.3d 397, 405 (6th Cir.2007) ("Even assuming that Rohm was not aiming his rifle at the LAV when he was shot, we nonetheless conclude that Sgt. Lubelan had probable cause to

5

believe that Rohm posed a serious threat to the officers in the LAV -- particularly Sgt. Homrich -- due to his proximity to the LAV while armed with a rifle, his prior violent behavior, and his continued refusal to surrender and face arrest."); *Lemmon v. City of Akron*, 768 F.App'x 410, 418-419 (6th Cir.2019) ("Accordingly, it is proper to attribute Sergeant Armstead's knowledge that William was a suspect in an armed robbery, and that he personally witnessed William holding something on his side, to the overall risk of bodily harm that William presented during the standoff with officers.")  Plaintiff cannot simply eliminate evidence related to the threat Green posed to the Officers.  It would both confuse the jury and prejudice the Officers.

Finally, although evidence related to the Officers' initial encounter with Green on East 26th Avenue and the "initial shots" on Duxberry Avenue, is relevant to the extent it relates to the information that the Officers knew about Green at the time of the use of deadly force—i.e., that he had a gun, had pointed it at the Officers, and had fired the gun at the Officers—Plaintiff should not be permitted to re-argue or present evidence related to issues the Sixth Circuit has already decided.  For example, Plaintiff should not be permitted to critique the Officers' approach of Green in plainclothes and an unmarked SUV, or to argue that the Officers did not announce/identify themselves as police, because the Sixth Circuit has already found that the Officers acted reasonably when they began shooting Green.[1]  Moreover, the Officers intend to show the GMC Acadia to the jury—which is clearly "unmarked"—as well as video that reveals the Officers are in plainclothes.

---

[1] Furthermore, the appropriate analysis is whether the force used to effect a seizure was reasonable, not whether it was reasonable for the police to create the circumstances. *See Livermore v. Lubelan*, 476 F.3d 397, 406 (6th Cir.2007); *Dickerson v. McCllellan*, 101 F.3d 1151, 1161 (6th Cir. 1996). A plaintiff "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Rucinski v. Oakland*, 655 Fed. App'x 338, 343 (6th Cir. 2016)); *see also San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015); *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017).

It would be inappropriate, however, for Plaintiff to rehash arguments regarding the Officers' tactics in approaching Green, an issue which has already been decided by the Sixth Circuit.

        Respectfully submitted,

        */s/ Alana Valle Tanoury*
        Alana Valle Tanoury (0092265)
        Westley M. Phillips (0077728) – LEAD
        *Assistant City Attorneys*
        CITY OF COLUMBUS, DEPARTMENT OF LAW
        ZACH KLEIN, CITY ATTORNEY
        77 North Front Street, Columbus, Ohio 43215
        (614) 645-6945 / (614) 645-6949 (fax)
        avtanoury@columbus.gov
        wmphillips@columbus.gov

        *Attorney for Defendants Jason Bare and Zachary Rosen*

## CERTIFICATE OF SERVICE

      I hereby certify that, on **October 27, 2021**, I electronically filed the foregoing "Defendants' Brief Addressing Scope of Trial" with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon the counsel of record by, and may be obtained through, the Court's CM/ECF System.

                                                */s/ Alana Valle Tanoury*
                                                Alana Valle Tanoury (0092265)