# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | |
|---|---|
| ADRIENNE HOOD, | Case No. 2:17-cv-471 |
| Plaintiff, | Judge Edmund A. Sargus, Jr. |
| v. | Magistrate Judge Elizabeth A Preston Deavers |
| JASON BARE, et al., | **PLAINTIFF HOOD'S BRIEF FOR THE TRIAL OF THIS CASE** |
| Defendants. | |

Plaintiff, Adrienne Hood, by and through her counsel, hereby submits her Brief for the Trial of This Case; and shows the Court the following:

The trial of this case should be and can be simple and short. The United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") unequivocally made it so by its ruling that the only remaining issue in the case is <u>whether the Officers continued to shoot at Green after he was no longer a physical threat</u>. That ruling establishes the correct liability standard for trial and the scope of admissible evidence.

## I.      The correct liability standard and the scope of admissible evidence

By its September 8, 2020 Opinion ("Opinion"), the Sixth Circuit affirmed the grant of summary judgment to all the defendants on all claims against them except for Police Officers and Defendants Jason Bare and Zachary Rosen; and *reversed* the grant of summary judgment to Bare and Rosen "<u>for the shots fired at [Henry] Green  after he was no longer a safety threat</u>." Opinion at p 1 (Emphasis added).  Applying the law regarding constitutional violations and qualified immunity under the objectionably unreasonable test[1], the Sixth Circuit

---

[1] The Court applied the standard 2-pronged test for determining liability: (i) whether officers violated a plaintiff's constitutional rights in an objectively unreasonable way; and (ii) whether those rights were clearly established at the time; and also applied the *Graham v. Connor*, 490 U.S. 386, 396 (1989)  3-

1

analyzed the confrontation between the two Officers and Green in two temporal segments: first, the "Officers' Initial Shots" segment when the two Officers first shot Green; and Green shot back at the Officers, followed by a short pause; and then the second segment, the "Officers' Last Shots" segment, which resulted in Green's death. *Id.* at pp 6-14.  For the "Officers' Initial Shots" segment, the Sixth Circuit found that the facts "suggest that the Officers did not violate Green's constitutional rights when they first fired at Green." *Id*. at p 9.

For the Officers' Last Shots segment, however, the Sixth Circuit found that "Genuine issues of material fact exist as to when the Officers stopped shooting Green," e.g., after Green had been "incapacitated or neutralized." *Id*. at pp 11-12.  "<u>This dispute is material to whether the **Officers continued to shoot at Green after he was no longer a physical threat**, in violation of Green's constitutional rights</u>." *Id*. at 12 (Emphasis added). The quoted language, particularly that in bold, is highly significant.  It is the law of the case and the *sole* issue for determining whether the two Officers are liable or not for violation of Green's constitutional rights:  If Officer Bare or Officer Rosen continued to shoot at Green after he was no longer a physical threat, that Officer is liable for violating Green's constitutional rights.  Period.  The only remaining issue is a collateral issue, the kinds and amounts of damages.

That this fact issue is the correct liability standard and scope of admissible evidence for trial is abundantly clear from the Opinion.  The court first noted that the question regarding the Officers' Last Shots was "whether the officers' initial decision to shoot was reasonable [during the Officers' Initial Shots segment] but there was <u>no need to continue shooting</u>. … When an officer faces a situation in which he could justifiably shoot, he <u>does **not** retain the right to shoot at any time thereafter with impunity</u>." *Id.* at p 11 (Citations and internal quotes omitted) (Emphasis added).   By this language reaffirming *the separateness of the two*

---

prong factors for guidance in determining whether there was a violation: (1)  the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  Opinion at pp 6-8.

Case: 2:17-cv-00471-EAS-EPD Doc #: 318 Filed: 10/27/21 Page: 3 of 8 PAGEID #: 14066

*segments*, the court established that facts regarding the Officers' Initial Shots segment <u>and</u> the court's "suggest[ion] that the Officers did not violate Green's constitutional rights when they first fired at Green" during that segment are irrelevant and admissible for any purpose regarding the Officers' Last Shots segment.

Moreover, the author of the Opinion, Judge Stranch cited multiple Sixth Circuit decisions squarely holding that the use of force against a suspect who was not a physical threat is *excessive as a* **matter of law**. *See Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (Emphasis added): "We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is <u>excessive as a **matter of law.**</u>" *See also* the briefs of the *Russo* and *Margeson* cases. Opinion at p 11. In the "Clearly Established Law"[2] section of the Opinion, the court again emphasized that "the use of force is <u>excessive as a **matter of law**</u> once the suspect has been incapacitated or neutralized and is no longer a safety threat," with cites to the *Shreve*, *Baker*, and *Dickerson,* cases. *Id.* at p 13 (Emphasis added). And lastly, while concluding that Officers Rosen and Bare were not entitled to qualified immunity or summary judgment, the court again emphasized the principle, stating pointedly that "Our precedents provide 'fair warning' to the Officers [Bare and Rosen] that <u>shooting at Green after he was no longer a safety threat is **unconstitutional**</u>." *Id*. at 14 (Emphasis added). All of these cases were analyzed under the "objective reasonableness" standard, s*ee, e.g., Baker*, 471 F.3d at 606, and all of those cases concluded that, under that standard, the use of force after the suspect is no longer a threat is excessive *as a matter of law*; and the Sixth Circuit in the instant case specifically held that <u>shooting at Green</u> after he was no longer a safety threat was excessive and therefore <u>unconstitutional</u>.

Accordingly, that the use of force after the suspect is no longer a threat is excessive is <u>not at issue</u>. That matter has been conclusively litigated and resulted in the black letter legal

---

[2] The second prong of the standard 2-pronged test for determining liability; see footnote 1 above.

3

principle that *subsumes* the objective unreasonableness standard. The *only* issue is whether Bare and/or Rosen continued to shoot at Green after he was no longer a physical threat.

For the same reason, the sole issue **whether the Officers continued to shoot at Green after he was no longer a physical threat** also determines the boundary of admissible evidence at the imminent trial in this case. The only evidence that is admissible is evidence that is relevant to that sole issue, or to damages. Any evidence not relevant to whether the Officers continued to shoot at Green after he was no longer a physical threat (or damages) is not admissible.

    **II.    Defendants' contention regarding the segmented analysis is incorrect**.

During the Court's telephone conference last Friday morning, October 22, counsel for Defendants contended that *all* the gunshots were fired in quick succession and should be viewed that way, which is an implicit challenge to the Sixth Circuit's segmented analysis approach discussed above. This challenge should be rejected for at least three independent reasons. First, as Judge Stranch pointed out, there is ample authority for the segmented approach. See the *Russo, Pleasant*, and *Bouggess* Sixth Circuit segmented approach cases in the Opinion at pp 9-10.

Second, the evidence contradicts counsel's contention: Again, as pointed out by Judge Stranch, Defendant "Rosen himself remembered a momentary lapse when Green disappeared from his view;" "Rutledge's observation that the Officers walked over to Green and took more shots while Green was on the ground shows a segment of the event separate from the initial shots;" and "Alfred … also said that the Officers continued to shoot at Green even as he was falling to the ground, and then they each took two or three more shots when Green was on the ground." Opinion at pp 10-11. The Sixth Circuit concluded that "It appears that there were gaps between the Officers' shots, and they had time to reassess Green's threat." *Id.* at p 11.

Third, (1) The Sixth Circuit's use of the segmented approach and conclusions drawn from it during the appeals stage are the *law of the case* and may not be reconsidered or ignored

4

during a subsequent stage, such as the trial stage. *Dixie Fuel Co., LLC v. Dir., OWCP*, 820 F.3d 833, 843 (6th Cir.2016) ("Under the law of the case doctrine, findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation."); and (2) "[A] district court is bound to the scope of the remand issued by the court of appeals … [T]he district court is without authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). The Sixth Circuit's Remand to the district court in this case is "We REMAND the case for further proceedings *consistent with this opinion*." Opinion at p 15 (Emphasis added).

### III. Defendants' contention that a different standard should apply is incorrect

During the Court's telephone conference last Friday morning, October 22, counsel for Defendants contended that the standard of liability should be whether *the Officers* Bare and/or Rosen reasonably *perceived* that Green presented a threat [apparently, during the entire incident]. As shown above, however, this contention is contrary to the Sixth Circuit's Opinion, and thereby violates the law of the case principle and also the principle that the district court is bound to the scope of the remand issued by the court of appeal. Moreover, the "reasonably perceived" by the defendants/officers' standard has been soundly rejected. *See, e.g.*, *Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021):

> The [district] judge's language is admittedly a bit imprecise. He framed the qualified-immunity question by asking whether the evidence showed that Officers Finkley and Stahl "perceived" or "reasonably believed" that Smith had or was reaching for a gun and thus posed an imminent danger to themselves or others. That's not quite the right way to frame the question. Qualified-immunity analysis does not ask what these officers perceived or believed but rather what the proverbial "reasonable officer" would have understood about the lawfulness of his actions if faced with these circumstances. Despite the imprecision, there's no doubt that the judge made a legal ruling rejecting the officers' claims of qualified immunity.

*Id*. at 753 n. 1 (by the dissenting Chief Judge who disagreed with the majority only on its holding that the court lacked jurisdiction to hear the appeal).

In a recent draft of the Pretrial Order, Defendants referred to an "objectively reasonable

officer" standard. While this is a step up from their previous "reasonably perceived by themselves" standard, it is still incorrect. As shown in section I above, the Sixth Circuit has subsumed the objectively reasonable standard into the black letter legal principle that the use of force after the suspect is no longer a threat is excessive *as a matter of law*. And in the instant case, the *only* issue is whether Bare and/or Rosen continued to shoot at Green after he was no longer a physical threat. Defendants' attempted deviation from the court's Opinion in this case on the standard is not permitted because, as shown in section II, it violates the law of the case principle and also the principle that the district court is bound to the scope of the remand issued by the court of appeals.

**IV.    The trial of this case should be and can be simple and short**

As shown above, because there is only one *narrow* issue to be tried, other than damages--namely, whether Bare and/or Rosen continued to shoot at Green after he was no longer a physical threat--the volume of *admissible* evidence should be small. In fact, based on a strict application of relevance, there is virtually ***no*** evidence regarding the time period prior to the Last Officers' Shots segment that is relevant and admissible <u>for the *Plaintiff* as well as for the *Defendants*</u>. There has been some discussion of allowing (strictly inadmissible) evidence for "background" and/or to provide "context" for the jury. But such an allowance could easily be misused by Defendants to get voluminous irrelevant materials in the record to the prejudice of Plaintiff. This can be avoided by the Court allowing only very specific pre-approved evidence and very little of it. The reality is that all the jury will need is a simple statement along the lines of the following:

> Police Officers Bare and Rosen, and a civilian, Mr. Green, had engaged in a gunfight in which the two Officers had fired shots at Mr. Green and Mr. Green had fired shots at the two Officers, Green had been hit by bullets and the Officers had not been hit by any bullets. The only issue for the jury to decide is, based on the evidence presented at the trial, whether Officer Bare and/or Officer Rosen continued to shoot at Green after he was no longer a physical threat.

6

With admissibility restricted to evidence relevant to the key sole issue and damages, the length of the trial could be as short as two days and should by no means exceed four days.

Defendants, however, include on their witness list **28** witnesses (and potentially more for "rebuttal or impeachment"), 10 of which they intend to call at trial, and 18+ more that they may call, a very high number for a case that has only one very narrow issue.  If permitted, this excessively large number of witnesses would significantly extend the number of trial days well beyond the reasonable 2-4 days.  The 28+ witnesses coupled with Defendants' voluminous proposed testimony well outside the proper scope of admissibility appears to be a tactic, to bog down this case with irrelevancies and drag it out with unnecessary additional days that likely will confuse, exhaust and disinterest the jury.  The Court is urged to take steps to prevent that.

 Respectfully submitted this 27th day of October 2021.

          **BEY & ASSOCIATES LLC**

          /s/N. John Bey
          N. John Bey
          Georgia Bar No. 118279
          191 Peachtree Street N.E., Suite 3230
          Atlanta, Georgia 30303
          Telephone: (404) 344-4448
          Facsimile: (404) 393-6107
          John@beyandassociates.com

          /s/ Sean L. Walton
          Sean L. Walton (0088401)
          Chanda L. Brown (0081076)
          Walton + Brown, LLP
          395 E. Broad Street, Suite 200
          Columbus, Ohio 43215
          T: (614) 636-3476
          F: (614) 636-3453
          swalton@waltonbrownlaw.com
          cbrown@waltonbrownlaw.com
          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on **October 27, 2021**, I electronically filed the foregoing with the Clerk of the Court by using this Court's e-Filing System, which will send a notice of this electronicfiling to all counsel of record in this matter.

**/s/Sean L. Walton**
Sean L. Walton (0088401)
