# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ADRIENNE HOOD, | Case No. 2:17-cv-471 |
| Plaintiff, | Judge Edmund A. Sargus, Jr. |
| v. | Magistrate Judge Elizabeth A Preston Deavers |
| JASON BARE, *et al.*, | **DEFENDANTS' NOTICE OF ADOPTION OF PRIOR FILINGS** |
| Defendants. | **AND** |
| | **SUPPLEMENT TO DEFENDANTS' MOTION IN LIMINE** |

Pursuant to the Court's Amended Order Setting Trial Date (ECF No. 346), Defendants Jason Bare and Zachary Rosen (collectively "Defendants"), hereby adopt the following filings that were previously submitted to the Court:

- MOTION IN LIMINE ECF No. 290, PAGEID #: 110447-57.

- SUPPLEMENTAL MOTION IN LIMINE ECF No. 319, PAGEID #: 14072-84.

Defendants request that the Court makes the same rulings on these matters as in its MOTION IN LIMINE ORDER issued on October 28, 2021. ECF No. 321, PAGEID #: 14086-14100.

Defendants also ask for the following evidentiary rulings to be made regarding statements previously made during closing argument. (TRIAL TRANSCRIPT Vol. 5, ECF No. 351): (1) the parties' arguments should reflect the correct wording of the 4th Amendment legal standard; (2) Plaintiff should not reargue the reasonableness of the "Initial Shots"; and (3) the Officers should be allowed to present evidence of Mr. Green's lifestyle, job history, education if Plaintiff intends to make financial damages and earning capacity arguments during closing.

Defendants also ask for the following evidentiary rulings to be made regarding Plaintiff's new exhibit list (ECF No. 357, PAGEID #: 15359-63): (1) Dr. Michael Lyman's report in this case should be inadmissible.

A memorandum in support is attached.

                              Respectfully submitted,

                              /s/ Westley M. Phillips
                              Westley M. Phillips (0077728) – LEAD
                              Alana Valle Tanoury (0092265)
                              CITY OF COLUMBUS, DEPARTMENT OF LAW
                              77 North Front Street, Columbus, Ohio 43215
                              (614) 645-7385 / (614) 645-6949 (fax)
                              wmphillips@columbus.gov
                              avtanoury@columbus.gov

                              Attorneys for Defendants Jason Bare
                              and Zachary Rosen

## MEMORANDUM IN SUPPORT

### I.  ISSUES ASSOCIATED WITH PLAINTIFF'S ARGUMENTS AT TRIAL

#### A.  4TH AMENDMENT LEGAL STANDARD

During closing argument, Plaintiff argued:

> We talked a lot about things that are for context, but make no doubt about it, this is about the last shots. And no gun plus no threat equals no shots by the officers. And if there's no gun and no threat and there are shots by the officers, then that is excessive force.

TRIAL TRANSCRIPT Vol. 5, p. 5, ECF No. 351, PAGEID #: 15227. The Officers request that this type of argument be slightly modified from "and no threat" to "and it's not reasonable to believe there is a threat…" so as to avoid any confusion regarding the legal standard. The jury must decide if it was *objectively reasonable to believe* a threat existed when the "Last Shots" were fired.

#### B.  THE OFFICERS' APPROACH OF GREEN AND THE "INITIAL SHOTS"

In regards to the Officers' approach of Mr. Green and the "Initial Shots," the Court has previously ruled as follows:

> At this juncture, the Court shall permit evidence of the "Initial Shots" and the events leading up to the "Initial Shots" so that the jury can understand the context of the "Last Shots." The Court will offer a limiting instruction to the jury that the Court of Appeals already decided the "Initial Shots" segment of the case and the jury will decide only the "Last Shots" portion of the case. The jury would be instructed to consider the events leading up to the incident and the "Initial Shots" for the limited purpose of contextualizing the "Last Shots." The parties should come prepared to discuss this issue at the Final Pretrial Conference.

MOTION IN LIMINE ORDER ECF No. 321, PAGEID #: 14094.

During closing argument, Plaintiff argued:

> So a lot is going to be made about being a reasonable officer, and I want to say I think that that is absolutely right. That's one thing that we may agree on. But it's a reasonable officer in plain clothes on this assignment in this day in this situation. And you heard testimony

3

from them. What was their—what was their assignment for the day? To be the eyes and ears for uniformed officers.

Couple things stick out. You heard from other people in the community who saw Henry that day. They didn't view him as a threat. Jamar said he saw him in good spirits earlier that day. Arman and Antoine, they testified that he briefly played ball with them. And Erica simply said I saw him earlier. He was fine. She also didn't know him.

We also know that they were in plain clothes. Now, it's in dispute whether they had these badges on, but we know that these were the clothes that they were wearing.

***You know, you can't have it both ways. You can't on one hand say that I'm on assignment and I'm trying to go below the radar and no one is supposed to know that I am an officer, and on the other hand say he should have known that I was an officer.***

These are the guns that they used that day, and this is the car that they were driving, a rental car with Florida plates, tinted back windows. You all saw it several times. Now, we know something happened here (indicating), and we know that Officer Rosen came up here (indicating), and we know that he also came down here. And we've heard testimony that he was flying down there, almost hit them, and that's when everything ensued. In Officer Rosen's own testimony he doesn't know who shot first. We also know everything happens right here when Henry Green was a few mere steps from his home.

***Now they want to come in here and they want to tell you that Henry Green was trying to have a shootout outside of the house that he lives in. It just doesn't make sense.***

You know what else doesn't make sense? These call codes. So they talk about these call codes as if no one else – like they're secret codes and no one else does these.

I tell you, one of my favorite aunts lives not far from here and she just retired after 30 years of being a dispatch person so I'm going to tell you this. We're talking about a 33, which is a person with a gun. And they say that–they make it sound like that's the only thing that they could have called in, but that's not the case.

Let's look over here. 10-3, officer in trouble, plain clothes. Gets them right over. ***You don't have to engage.*** That was another option. It doesn't matter if I'm putting it in context, though, for the case

4

> because, of course, *they made it sound like that's the only thing that could have happened*.
>
> *There's also one that I wish would have happened over here*, and that's a 10-55 because with being -- and the 10-55 is house to watch because *if you wait another 30 seconds, he walks up onto his porch, you call it in, there's a house to watch, and you come and you can have a conversation, you can apprehend, you can do anything that you want. But he wasn't able to get to his doorstep*. And there's also down here, of course, 10-57, for assistance or backup. That's what you're not hearing.
>
> So again, we know right here (indicating), that's the distance he had to get to. But instead, here's the aftermath of what we see: Henry's shoe, the gun, and over here we can see the blood where he finally— he finally laid to rest. It's all a very close, close proximity.

TRIAL TRANSCRIPT Vol. 5, pp. 11-14, ECF No. 351, PAGEID #: 15233-36 (emphasis added).

As demonstrated above, Plaintiff went beyond discussing evidence regarding the "Initial Shots" and the events leading up to the "Initial Shots" so that the jury can understand the context of the "Last Shots." Plaintiff went one step further and argued that the Officers acted unreasonably and made tactical misjudgments, errors, or mistakes that provoked the deadly encounter. The Sixth Circuit has already determined that the "Initial Shots" were objectively reasonable. Furthermore, Plaintiff "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Rucinski v. Oakland*, 655 Fed. App'x 338, 343 (6th Cir. 2016)); *see also San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015); *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017). Thus, Plaintiff should be precluded from making these types of arguments as they do not relate to the reasonableness of the "Last Shots" and Green's rights. Any arguments pertaining to these allegations is irrelevant and confusing to the jury. At a minimum, the jury should be instructed that the "Initial Shots" have already been found to be reasonable.

### C. DAMAGES AND MR. GREEN'S LIFESTYLE, JOB HISTORY, AND EDUCATION

Regarding the Officers' ability to present evidence of Mr. Green's lifestyle, job history, education, and alleged domestic violence to rebut Plaintiff's claims for damages, the Court previously ruled as follows:

> Defendants propose to offer evidence of Green's lifestyle, job history, education, and alleged domestic violence to rebut Plaintiff's claims for damages. (*See generally* Def.'s Witness List.) Plaintiff moves to exclude this evidence as irrelevant and unfairly prejudicial. Since the Court lacks knowledge of what damages Plaintiff alleges, the Court **HOLDS** this motion **IN ABEYANCE**. If a party wishes to introduce the following evidence at trial, the party is **ORDERED** to first raise the issue with the Court outside the presence of the jury:
>
> - Adrienne Hood's testimony of Green's educational background, job history, and lifestyle. (*Id.*)
>
> - Testimony of Green's lifestyle or background from Alliyah Galusha-Smith (*Id.* at 2), Devonte Todd Lewis (*Id.* at 3), Brittany Stowers (*Id.* at 8), or Syreeta L. Hood (*Id.* at 9).
>
> - Christian Rutledge and Jamar Jordan's testimony and text messages exchanged with Green allegedly showing Green's lifestyle (*Id.* at 6, 8).
>
> - John Slosser's testimony to authenticate Green's phone to use Green's text messages to show damages. (*Id.* at 8.)

MOTION IN LIMINE ORDER ECF No. 322, PAGEID #: 14107.

To avoid opening the door for this evidence, Plaintiff, in her presentation of evidence, did not present any testimony or exhibits regarding lost wages, etc…and instead focused on Ms. Hood's grief. However, during her closing argument, Plaintiff argued as follows:

> You know, kids get tattoos all the time and you – you know, I'm a little bit older. You know, it's more of a more recent phenomenon, but kids get tattoos all the time, but how many kids do you know would get a tattoo that says life is a gift? Henry knew that that was a gift from his mom. He knew how she felt about it and he knew what that meant. He's irreplaceable. He's unique.

6

> I'm a sports fan. I'll tell you, if we were talking about Baker Mayfield, some folks would say hey, let's give him a contract, 150 million. Less than Patrick Mahomes, but it's still a good contract.
>
> Before the trial got started the other side was talking about Lebron James. Nobody bats an eye if he makes 200 million for a couple years of his life dribbling a basketball.
>
> If we were to go up to New York and go to a museum, see some famous art, nobody bats an eye to say well, why would someone pay millions of dollars for that art? Well, because it's unique. There's nothing like it. So I'll be unapologetic. When I ask you to return a verdict for Henry Green, I'm going to ask you to fill in this verdict form for a hundred million dollars.
>
> Why is that number significant? I'll tell you this:
>
> There's no difference between if we look at a dollar or if you look at a hundred million. The only difference there is what it means, and that's up to you all. You all may take my suggestion, you may come up with a number yourself. But I will tell you that Henry Green's life isn't worth a few bucks. It's not even about -- it's about what it means and it's about a message to the community about Henry Green, the fifth; the legacy that is no longer there. You heard her talk about— you heard Sergeant Hood talk about how there won't be anymore grandkids from Henry. If you would have got a chance to talk to his dad, you would know that that's a legacy that is gone now.
>
> I simply ask that you speak justice and you come up with a number that is representative of the life that they took away.

TRIAL TRANSCRIPT Vol. 5, pp. 25-27, ECF No. 351, PAGEID #: 15247-49.

It is the position of the Officers that this portion of Plaintiff's closing argument went to Mr. Green's alleged financial damages and earning capacity. If Plaintiff is allowed to make these types of arguments during closing, the Officers should be allowed to present evidence of Mr. Green's lifestyle, job history, education, and alleged domestic violence to rebut these arguments.

**II.     PLAINTIFF'S NEW EXHIBIT LIST (ECF NO. 357)**

In addition to the objections made in the Officers' previous filings, the Officers object to one item contained on Plaintiff's new exhibit list (ECF No. 357).

7

### 1. P.53 Lyman CV

P.53 Lyman CV is Dr. Michael Lyman's report in this case which was previously filed with the court. ECF No. 146-1, PAGEID #: 1515-45. That report is inadmissible hearsay. Additionally, a review of the report reveals that it that states the use of deadly force by the Officers was unnecessary, excessive and unreasonable under the circumstances. This opinion is inadmissible under Rule 702 as it is based on Dr. Lyman's legal conclusions, credibility determinations, and speculations that are either not helpful to the jury or invade the province of the Court. *See Sanders v. Studdard*, 2014 U.S. Dist. LEXIS 98817, *25 (a case regarding the exclusion of Dr. Lyman's opinions). The court in *Sanders* stated:

> [W]hile Dr. Lyman does not explicitly state the Officers acted unreasonably, he heavily implies any amount of force applied to Plaintiff was not necessary under the circumstances. These are inadmissible legal conclusions. *See Scherrer*, 2009 U.S. Dist. LEXIS 18129, 2009 WL 690186, at *3 (citing *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995)) (additional citation omitted) (finding expert testimony on the reasonableness of force was inadmissible even if the testimony avoided the word "excessive").

*Sanders v. Studdard*, 2014 U.S. Dist. LEXIS 98817, *21-22. And the Sixth Circuit agrees that expert testimony on legal matters is inadmissible. In short, "[b]ecause testimony about whether the officers used reasonable force is a legal conclusion and may confuse the trier of fact, the district court is within its sound discretion to exclude it," *Hubbard v. Gross*, 199 F. App'x 433, 443 (6th Cir. 2006).

The vast majority of Dr. Lyman's report concerns his opinions regarding the Officer's tactics, approach, and the "Initial Shots." It is inappropriate for the jury to be presented an expert's report regarding the propriety of the "Initial Shots" as those were found to be permissible by the Sixth Circuit. And as stated above, Plaintiff "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided."

8

### III. CONCLUSION

For the reasons stated above, and in their previous filings, Defendants jointly and respectfully ask this Court for an order (1) adopting the rulings made in its MOTION IN LIMINE ORDER issued on October 28, 2021 (ECF No. 321, PAGEID #: 14086-14100); (2) requiring the parties' arguments to reflect the correct wording of the 4th Amendment legal standard; (3) precluding Plaintiff from rearguing the reasonableness of the "Initial Shots"; (4) allowing the Officers to present evidence of Mr. Green's lifestyle, job history, and education if Plaintiff intends to make financial damages and earning capacity arguments during closing; and (5) excluding Dr. Michael Lyman's report in this case.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips (0077728) – LEAD
Alana Valle Tanoury (0092265)
CITY OF COLUMBUS, DEPARTMENT OF LAW
77 North Front Street, Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov
avtanoury@columbus.gov

Attorneys for Defendants Jason Bare
and Zachary Rosen

## CERTIFICATE OF SERVICE

I hereby certify that, on **March 14, 2022**, I electronically filed the foregoing with the Clerk of the Court by using this Court's e-Filing System, which will send a notice of this electronic filing to all counsel of record in this matter:

/s/ Westley M. Phillips
Westley M. Phillips (0077728)
