**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ADRIENNE HOOD, | Case No. 2:17-cv-471 |
| Plaintiff, | Judge Edmund A. Sargus, Jr. |
| v. | Magistrate Judge Elizabeth A Preston Deavers |
| JASON BARE, et al., | **PLAINTIFF'S MOTION FOR SANCTIONS** |
| Defendants. | |

Plaintiff, Adrienne Hood, by and through her counsel, moves the Court for an Order finding that Defendants have abused the discovery process by spoliating evidence. Plaintiff further moves the Court for an order to sanction Defendants and by ordering the submission of a spoliation presumption instruction to the jury at the time of trial.

**INTRODUCTION:**

The imposition of sanctions for spoliation has deep historic roots. See Goodman v. Praxair Servs., 632 F. Supp. 2d 494, 518 (D. Md. 2009).

> The law, in hatred of the spoliator, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrongdoer by the very means he had so confidentially employed to perpetrate the wrongdoing….Indeed, the origin of the doctrine of spoliation is often traced back to the 288-year-old case of Armory v. Delamirie,… "unless the [goldsmith] did produce the jewel, and shew it not to be of the finest water, they should presume the strongest against him." Id. citing Armory v. Delamirie, (1722) 93 Eng. Rep. 664 (K.B); I Str. 505. (Opinion of Chief Justice Pratt).

1

Given the excess of involvement and control exercised by Defendants' attorneys throughout this matter, there is ample cause for the imposition of stiff sanctions.

**Background**. The incident that involved the GMC and that gave rise to this litigation occurred on June 6, 2016 in Columbus, Ohio. According to the Defendants, on June 7, 2016, the GMC, which had been rented from Enterprise Rental, was impounded and transported to the Columbus Police Impound Lot and placed in a secured vehicle "processing" facility where it was "processed" by Columbus police detectives, after which the GMC was removed from the secure facility and placed on the impound lot; and thereafter Columbus police officers made arrangements to transport the GMC back to Enterprise. Defendants' original Motion for Jury View of GMC Acadia, 10/04/21, Doc # 285, at p. 3 and Ex. A at ¶¶ 15, 17-20.

On August 22, 2016, Plaintiff's counsel Sean Walton and Chanda Brown served on the Columbus Division of Police a litigation hold letter, requesting that all evidence from the case be held. *Id*. at p. 3 and Ex. A ¶ 21. On August 31, the Columbus Division of Police recovered the GMC from a body shop used by Enterprise for repairs and took the GMC to the Columbus Police Impound Lot in a "secure vehicle processing facility." *Id*. at p. 3 and Ex. A ¶¶ 22-24.

Thereafter, Defendants were required to, and Plaintiff expected Defendants to abide by the litigation hold letter and make no changes to the GMC. That is, Defendants were required to _maintain_ the GMC in the _same condition_ it was in immediately after the shooting incident that occurred on June 6, 2016. Defendants failed to do that; and even concede that failure. In their original motion for a Jury View of the GMC in October 2021, Defendants concede that the condition of the GMC is only "*substantially* the same condition as it was at the time of the June 6, 2016 gunfire exchange." *Id*. at p. 3 (emphasis added). Even that concession, however, is false and misleading, as several of the changes are significant and fall well below "substantially the same," and instead are plainly not the same at all.

2

**Defendants had a Duty to Preserve the Evidence**.

A party may have statutory, regulatory, or ethical duty to preserve evidence. If a party violates the duty to preserve evidence, the party may be subject to sanctions and a spoliation presumption instruction. Without consequences, the duty to preserve evidence is rendered meaningless.

The duty to preserve evidence arises when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession will be material and relevant to the claim. Defendants were on notice of Henry Green's death immediately after its occurrence and also knew immediately after the incident that Henry Green's death was due to being shot by Officer Zachary Rosen, and possibly Officer Jason Bare. Because parties have a duty to preserve evidence that is relevant to a suit, it is only logical that they should be held accountable for negligent or intentional spoliation. Allowing a court to hold a party accountable for negligent as well as intentional spoliation is clearly consistent with the evidentiary rationale supporting the rule because the remedy ameliorates the prejudicial effects resulting from the unavailability of evidence.

As such significant changes were made to the GMC Acadia ("GMC") that are unfairly prejudicial to Plaintiff were made by Defendants' experts and/or others on behalf of the Defendants and/or the Columbus Police Department and/or the Columbus Division of Police while the GMC was in the custody of the Columbus Police and the Columbus Police Impound Lot.

**The significant changes in the condition of the GMC**.

It is important to note that the significant changes and other changes to the GMC conceded by Defendants at the time of their October 2021 motion *had already occurred*, they were a *fait accompli;* and they were made *unilaterally* by Defendants and their support groups, i.e., the police and experts, with no input from or disclosure to Plaintiff. This is bad faith, plain and simple.

3

The three most significant changes to the condition of the GMC made and conceded by Defendants are "[1] the driver's side mirror was detached, [2] the interior door panel was removed, and [3] a piece of the headliner [a/k/a weather stripping] was removed to remove bullets."[1] *Id*. at p. 3. All three of these changes were made to remove bullets for analysis by Defendants' experts and fellow police officers and detectives for *Defendants' benefit*, in preparation for litigation, again with no disclosure to, or input from Plaintiff. For the sake of brevity, the analysis here focuses on the first and third changes, beginning with the third, which is the most significant.

**<u>Defendants' change to the weather stripping on the edge of the door frame of the driver's door is highly prejudicial to Plaintiff</u>**.

The condition of the rubber weather stripping on the edge of the door frame of the driver's door of the GMC was addressed by *Defendants'* expert Mathew Noedel:

> A fired bullet struck the weather stripping and the edge of the door frame of the driver's door. <u>The *direction* of travel indicated for this damage was from *inside* the GMC toward the *outside*</u> (based on the hole in the weather stripping and the bent metal underneath). No specific fired bullet was located to account for this impact and no close range "stippling" was observed on the rubber weather stripping.

Mathew Noedel Report, attached as Exhibit B, at page 7 (Emphasis added). Noedel also concluded from police photographs that the glass window of the driver's door on the GMC was shattered. *Id*. at page 3, under *Bullet Path Analysis*.

Noedel confirmed his statement in the report underlined above with his testimony in the first trial: "So there is a bullet defect, bullet impact that is on the weatherstripping just above and next to the side view mirror that you may have seen was damaged. That damage went through the rubber gasket and was <u>heading outward from the inside of the door to the outside of the door</u>." Transcript of Jury Trial Proceedings—Volume 4 Before the Honorable Edmund A. Sargus, Jr., United States District Judge, November 12, 2021, Columbus Ohio ("Transcript-Volume 4") at 123:24-124:3;

---

[1] The other changes to the condition of the GMC conceded by Defendants are flat tires and dust on the vehicle. *Id.*

4

131:15-21 (Emphasis added). Underneath the language quoted above on page 7 of the report are two related photos. The first photo shows the entire inside of the open driver's door with an arrow pointing where the fired bullet struck the weather stripping and door frame; and the second photo is a close-up of the weather stripping with a bullet hole hanging down from the edge of the door frame, which shows the bent metal. Attached as Exhibit B-1 is a blown-up version of the second photo that more clearly shows the weather stripping hanging, the bullet hole in that weather stripping and the bent metal of the edge of the door frame.

Moreover, at trial Noedel further testified that:

- The shattered glass on the ground [street] was *outside* the driver's door and came from the front window on the driver's side of the GMC. Transcript—Volume 4 133:3-16. See also two photos in Exhibit D (15 Latta Photo 26 DSC_0034-Scene SW view.pdf; 119 Latta Photo 27 DSC0035 – Scene W view.pdf).
- When asked, "On that weatherstripping, if the window was up and that shot was fired, would the window have shattered? Would the glass have shattered?", Noedel answered "Yes." *Id*. at 132:20-23.
- Regarding the shot fired from the inside that struck and created a hole in the weather stripping and dented the metal frame: "It appears that it's more or less a level shot; that is, the hole in the rubber gasket is not low and the dent high. They seem to be along the same plane." *Id*. at 125:3-6.
- He agrees he has evidence that there was a bullet that came out [heading from the inside of the door to the outside] that could have shattered the window glass, but he has no scientific evidence of a bullet going in [from outside of the door to inside the door] that could shatter the window glass. *Id*. at 134:12-17 (Emphasis added).

In summary, Noedel concluded that the bullet was fired from inside the GMC heading toward the outside; that if the window was up, *that* bullet would have shattered the glass; that the bullet fired was a level shot [in contrast to the shots at angles from Green's gun]; that the driver's side front window glass was shattered; that the shattered glass on the street came from that front window and was *outside* the open door; and that he has evidence that the fired bullet could have and would have shattered the glass if the window were up, but he has no scientific evidence of a bullet going from the outside of the door to the inside of the door that could shatter the glass.

5

      This evidence is very significant because it is consistent with the testimony of Jamar Jordan, an eyewitness who testified that the driver of the GMC--Defendant Zachary Rosen--shot the driver's side window out from inside the GMC.  Transcript of Jury Trial Proceedings—Volume 2 Before the Honorable Edmund A. Sargus, Jr., United States District Judge, November 9, 2021, Columbus Ohio ("Transcript—Volume 2") at 35:23-36:17.  Contrary to Mr. Noedel's and Mr. Jordan's testimony, Defendant Rosen testified that he did not shoot the driver's side window out.  Transcript of Jury Trial Proceedings—Volume 3 Before the Honorable Edmund A. Sargus, Jr., United States District Judge, November 10, 2021, Columbus Ohio ("Transcript —Volume 3") at 84:8-12.  Note that Rosen concedes he was aiming his gun in the V between the open door and the windshield, *id*. at 84:13-15, which is just an inch or so to the right of the spot on the weather stripping and door struck by the bullet fired from inside; and Rosen was the only person at that inside position.

      Plainly, Mr. Noedel's substantial evidence and photos--particularly the hanging weather stripping with a bullet hole in it--coupled with Mr. Jordan's unequivocal eyewitness testimony that Defendant Rosen shot the driver's side window out--make a compelling showing that Defendant Rosen did shoot his driver's side window out.  And this has broader implications because it is strong evidence that Officer Rosen lied under oath, that he is a liar.  This showing thus undermines Rosen's credibility on many other critical issues in this case and that could well be dispositive for the jury.  It is a major element in this trial.

      However, as observed by counsel for Plaintiff, John Bey, at the Jury Views of the GMC on November 9 and 12, 2021, the Defendants' change made to the weather stripping was to push the stripping back into the edge of the door frame, so that the weather stripping was not hanging and the bullet hole in the weather stripping could not be seen.  Thus, the two key features evidencing what happened--as shown by *Defendants*' expert Noedel--have been eliminated.

      For this reason alone, the court should grant Plaintiff's Motion.

**Defendants' change by detaching the driver's side mirror on the GMC**

Photographs taken of the GMC right after the incident and right after the GMC was taken into custody by Columbus Police Impound Lot, but before "processing", show that the driver's side mirror was intact and fully assembled, and show cracks at the bottom front of the mirror's cover caused by a fired bullet. See two photos in Exhibit C attached hereto (195 Shoaf Photo 06 LAS_0006; and 119 Latta Photo 27 DSC_0035).

As observed by counsel for Plaintiff, John Bey, at the Jury Views of the GMC on November 9 and 12, 2021, however, the Defendants had removed the *entire* cover of the mirror, top to bottom, making it appear, falsely, as though a bullet had shot off the entire mirror cover, and resulted in a much more dramatic effect to the viewing and not simply the facts. For this reason alone, the court should grant Plaintiff's Motion.

## SANCTIONS

Rule 37 Federal Rule of Civil Procedure 37 "provides a district court with authority to impose sanctions, including dismissal, on a party for abuse of the discovery process." Goodman v. New Horizons Cmty. Serv. Bd., No. 05-14717, 2006 WL 940646, at *1 (11th Cir. 2006) (citing Phipps v. Blakeney, 8 F.3d 788, 790 (11th Cir. 1993)). "A court may impose sanctions where a party fails to provide answers, objections, or a written response to interrogatories or requests for production." Steed, 308 F. App'x at 370 (citing Fed. R. Civ. P. 37(d)(1)(A)(ii)). Sanctions under Rule 37 can include: (1) payment of reasonable expenses the discovery failure caused; (2) establishing facts as the prevailing party claims; (3) preventing the disobedient party from objecting to established claims or presenting certain matters into evidence; (4) striking the pleadings partially or entirely; (5) staying the proceeding until the disobedient party complies with the order; (6) dismissing the action or proceeding partially or entirely; and (7) entering a default judgment against the disobedient party. Id. (citing Fed. R. Civ. P. 37(d)(3)). Rule 37(c) provides that a party that fails without substantial

7

justification to disclose evidence under Rule 26(a) or Rule 26(e)(1) shall not be allowed to use that evidence "at a trial, at a hearing, or on a motion." Stallworth v. E-Z Serve Convenience Stores, 199 F.R.D. 366, 368 (M.D. Ala. 2001). The non-disclosing party has the burden of proving its actions were either substantially justified or harmless. Id. (citation omitted); see also Crawford v. ITW Food Equip. Grp., 977 F.3d 1331, 1341 (11th Cir. 2020). Courts may also impose sanctions under their inherent authority "to police those appearing before them." Purchasing Power, LLC, 851 F.3d at 1223 (citation omitted). This inherent power "is governed . . . by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. The inherent sanction power "must be exercised with restraint and discretion" to impose appropriate sanctions for litigation misconduct. Id. A court may exercise its inherent sanctions power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (citation omitted). Courts' inherent powers are based on a subjective bad-faith standard. Id. Subjective bad faith that unlocks a court's inherent sanctions power requires more than mere recklessness. Courts unsure of whether to sanction a party pursuant to inherent powers look to Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Id. There, the Supreme Court established that the sanctions "power is not a remedy for protracted litigation; it is for rectifying disobedience, regardless of whether such disobedience interfered with the conduct of the trial." Id. (citing Chambers, 501 U.S. at 44). "Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." Id. Here, the facts that Defendants clearly allowed the GMC Acadia to be altered after they knew, or should have known, there would be litigation in this matter and after they received a spoliation notice from Plaintiff's counsel, would warrant sanctions under Rule 37. See O'Berry v. Turner, Nos. 7:15-CV-00064-HL, 7:15-CV-00075-HL, 2016 WL 1700403, at *2, 4 (M.D. Ga. Apr. 27, 2016) (finding Rule 37 sanctions appropriate where defendant failed to maintain relevant

8

documents while the documents were in its sole possession and delayed contact with its "loss control manager" about the documents and a request for copies of them, despite plaintiff's counsel's numerous requests for the documents). Rule 37 further allows the Court to order Defendants to pay costs. Therefore Plaintiff requests that this Court sanction Defendants for the spoliation of material evidence and award her all fees and costs incurred in connection with the filing of this Motion and to deter Defendants from further acts spoliation; and order the submission of a spoliation presumption instruction to the jury at the time of trial.

**BEY & ASSOCIATES LLC**

/s/N. John Bey
N. John Bey
Georgia Bar No. 118279
Attorney for Plaintiff
191 Peachtree Street N.E., Suite 3230
Atlanta, Georgia 30303
Telephone: (404) 344-4448
Facsimile: (404) 393-6107
John@beyandassociates.com


/s/ Sean L. Walton
Sean L. Walton (0088401)
Chanda L. Brown
(0081076)Walton +
Brown, LLP
395 E. Broad Street, Suite 200
Columbus, Ohio 43215
T: (614) 636-3476
F: (614) 636-3453
swalton@waltonbrownlaw.com
cbrown@waltonbrownlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on **April 13, 2022**, I electronically filed the foregoing with the Clerk of the Court by using this Court's e-Filing System, which will send a notice of this electronicfiling to all counsel of record in this matter.

Respectfully submitted this 13th day of April 2022.

        **BEY & ASSOCIATES, LLC**

        /s/ ***N. John Bey***
        N. John Bey
        Georgia Bar No. 118279
        Attorney for Plaintiff
        191 Peachtree Street NE, Suite 3230
        Atlanta, Georgia 30303
        Telephone (404) 344-4448
        Facsimile (404) 393-6107
        John@beyandassociates.com

        /s/ ***Sean L. Walton***
        Sean L. Walton
        (0088401)
        Chanda L. Brown
        Walton + Brown, LLP
        395 East Broad Street, Suite 200
        Columbus, Ohio 43215
        Telephone (614) 636-3476
        Facsimile (614) 636-3453
        swalton@waltonbrownlaw.com
        cbrown@waltonbrownlaw.com
        *Attorneys for Plaintiff*